CHARLES ENGLISH, PROSECUTOR, v. ERWIN B. HOCK, COMMISSIONER OF THE STATE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, DEFENDANT.

Submitted October 7, 1947—Decided March 12, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the prosecutor, *Samuel S. Ferster* and *Donal C. Fox.*

For the respondent, *Walter D. Van Riper,* Attorney-General and *Samuel B. Helfand,* Deputy Attorney-General.

The opinion of the court was delivered by .

BURLING, J. The prosecutor was, on March 13th, 1946, the holder of plenary retail consumption license C-7 issued by the Township Committee of the Township of Livingston for premises at 343 West Mount Pleasant Avenue, Livingston, County of Essex and State of New Jersey.

Notice was given on April 10th, 1946, to the prosecutor of the presentment of the charge against him in the following language: "On March 13th, 1946, you possessed illicit alcoholic beverages at your licensed premises viz. three 4/5 quart bottles labeled 'Canadian Club Blended Canadian Whisky' all of which bottles contained alcoholic beverages not genuine as labeled; such possession being in violation of *R. S.* 33:1–50" and calling upon him to show cause why his license should not be suspended or revoked. The prosecutor pleaded "not guilty" to the charge and after the reception of the testimony he was adjudged guilty and his license was suspended for a period of twenty-five days by the Deputy Commissioner, Erwin B. Hock, now the Commissioner of the Department of Alcoholic Beverage Control.

Application was made to the Honorable Charles W. Parker, Justice of the Supreme Court, for a writ of *certiorari* and the writ was denied by him. Application was then made to the Supreme Court *en banc.*

With his present application, the prosecutor presented an affidavit dated the 7th day of April, 1947. There is printed in the state of case an affidavit dated the 20th day of March, 1947, of Samuel B. Helfand. It is assumed that this affidavit was used on the application to Mr. Justice Parker on March 22d, 1947, but is also again presented. In addition the testimony taken before the hearer of the Department of Alcoholic Beverage Control on July 26th, 1946, which was the basis for the order for which a review is desired is printed in the state of case. In the briefs of both parties references are made to the affidavits referred to and the testimony. In disposing of this matter, consideration has been given to such affidavits and testimony upon the assumption that there was an agreement by them to that effect.

On March 13th, 1946, an agent of the Department of Alcoholic Beverage Control made an inspection of the prosecutor's licensed premises, and in the course of such inspection, tested the contents of the prosecutor's open liquor stock. On the agent's preliminary test, three of these bottles, each labeled "Canadian Club Blended Canadian Whisky," indicated a variance in color from a genuine sample of that product. These three bottles, together with a sealed bottle of the same brand of liquor obtained from the prosecutor for comparative purposes, were submitted to the department's chemist for formal analysis. The chemist testified that the chemical formula for a genuine sample of Canadian Club Blended Canadian Whisky is as follows:

Acids—Not less than 19 grams per one hundred liters.
Solids—Not more than 125 grams per one hundred liters.
Color—Minute traces of artificial color.

The chemist further testified that this formula had been obtained from the manufacturer of the product in question and as a result of analyzing the contents of more than 47 bottles of that brand. In addition, he had analyzed the contents of the genuine sealed bottle obtained from the prosecutor for comparative purposes.

The acid, solid and color content of the three illicit bottles were analyzed by the chemist as follows:

Acids—Two bottles contained 8.4 grams per one hundred liters and the third bottle contained 8.16 grams per hundred liters.

Solids—One bottle contained 300.4 grams per one hundred liters, another 265.8 grams per one hundred liters and the third, 322 grams per one hundred liters.

Colors—Each bottle contained a large quantity of artificial coloring.

Because of the extreme variance between the genuine formula and the analysis of the illicit bottles, the chemist stated that none of the three illicit bottles contained genuine Canadian Club Blended Canadian Whisky as labeled.

The chemist further testified that he did not test for esters, aldehydes, furfural or fusel oil "because they [the three bottles] are so 'far off' I didn't think it was necessary to test anything else."

The prosecutor, the only witness for the defense, merely testified that neither he nor his sons had tampered with the contents of the three bottles. He further testified, however, that he also employed two other persons on his licensed premises.

No testimony was offered to refute the analysis made by the department chemist, although the prosecutor indicated that he intended to have "[his] chemist analyze the contents." No such analysis was made, however, by any chemist on the prosecutor's behalf.

No reasons were especially enumerated by the prosecutor but five points were argued in his brief.

Points one and two raised by the prosecutor are as follows:

I. The three bottles of alcoholic beverages taken from the licensee by the A. B. C. agent bore labels which truly described their contents.

II. Even if the brand name were to be considered part of the descriptive matter on the label, the chemist's testimony does not establish any chemical standard of the product by which the contents of the three bottles taken by the A. B. C. agent can be tested.

37

*R. S.* 33:1–50(c) provides that no person shall "possess, have custody of, offer for sale or sell any illicit beverage."

*R. S.* 33:1–88 (*Pamph. L.* 1939, *ch.* 177, *p.* 530) provides that "Any alcoholic beverage in any * * * bottle * * * shall * * * be deemed *prima facie* an illicit beverage where the container * * * bears a label which does not truly describe its contents * * *."

The department proved that the acid, solid and color content of each of the three bottles, labeled Canadian Club Blended Canadian Whisky, differed materially and substantially from a genuine sample of that product and did not contain genuine Canadian Club Blended Canadian Whisky as labeled.

The prosecutor's contention is that this evidence did not meet the test of the statute. The Court of Errors and Appeals, however, has decided to the contrary in the case of *The Panda* v. *Driscoll* (*Court of Errors and Appeals,* 1946), 135 *N. J. L.* 164. In that case, the record indicates that the variance between the contents of the illicit bottle and a genuine bottle of Schenley Reserve Whisky was only in solid content. The court held that "there was ample evidence to sustain the charge" and that the "chemical analysis of the contents of the seized bottle disclosed that it was not genuine Schenley Reserve Whisky as labeled." In this connection, the court further said (at *p.* 166):

"The evidence disclosed that the appellant possessed a bottle containing an alcoholic beverage bearing a label which did not truly describe its contents, which under *Pamph. L.* 1939, *ch.* 177, *p.* 530, § 1; *R. S.* 33:1–88 was *prima facie* evidence that the bottle contained an illicit beverage."

Points three and four are as follows:

III. Even if it were established that the contents of the bottle are not genuine "Canadian Club Blended Canadian Whisky" and hence not truly described by the label, with the consequent presumption of being illicit, such presumption has been fairly and fully overcome by the evidence presented by the prosecutor.

IV. Knowledge that the alcoholic beverages were illicit is essential to guilt.

The prosecutor urges that he has overcome the presumption of the illicit character of the alcoholic beverages in question by testimony that neither he nor his sons had tampered with the contents of the three bottles. It has already been pointed out, however, that the prosecutor admitted that he had employed two other persons on his licensed premises.

In any event, this evidence indicated only that the prosecutor had no knowledge of the illicit nature of the alcoholic beverages contained in the three bottles. This court has held that the violation of possessing illicit alcoholic beverages is complete without proof of such knowledge. *Cedar Restaurant and Cafe Co.* v. *Hock* (*Supreme Court,* 1947), 135 *N. J. L.* 156.

Point five is as follows:

V. The charge served upon the prosecutor does not set forth any offense for which prosecutor's license can be suspended.

The prosecutor contends that the instant charge does not set forth any such accusation, in that it merely calls upon the prosecutor to meet the issue as to whether or not the alcoholic beverage in his possession are illicit solely because they are not genuine "Canadian Club Blended Canadian Whisky" and that the alcoholic beverages were not necessarily illicit merely because they were not genuine "Canadian Club Blended Canadian Whisky," and prosecutor's motion for dismissal of the charge should have been granted.

In the *Panda* case, *supra,* the Court of Errors and Appeals held to the contrary. The charge against the prosecutor is similar to that approved by the Court of Errors and Appeals in that case. At page 165 of the opinion, it is said: "The Panda was notified of a hearing before the Commissioner on a charge that it had violated the provisions of *R. S.* 33 :1–50 in that it had possessed 'alcoholic beverage not genuine as labeled,'" and further (at *p.* 166) : "The possession of such illicit beverage is a misdemeanor under *R. S.* 33 :1–50."

Our study of the affidavits and testimony and arguments in support of and in opposition to the application leads us to the conclusion that no reasonably debatable question of fact or law is presented. A writ is denied.